IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**UNITED STATES OF AMERICA**

**vs.**                                              **3:04cr54/RV;  3:07CV136/RV/MD**
                                                    **3:04cr85/RV;  3:07CV141/RV/MD**

**TIEN QUYET LUONG**

---

## REPORT AND RECOMMENDATION

This matter is before the court upon defendant's identical motions to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255 filed in the two above-styled criminal cases   (case 3:04cr54, doc. 245; case 3:04cr85, doc. 49), and supporting memorandum of law (case 3:04cr54, doc. 251; case 3:04cr85,  doc. 55). The government has filed identical responses in each case (case 3:04cr54, doc. 252; case 3:04cr85, doc. 56) and the defendant has filed a reply  (case 3:04cr54, doc. 258; case 3:04cr85,  doc. 60).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After a careful review of the record and the arguments presented, it is the opinion of the undersigned that defendant has not raised any issue requiring an evidentiary hearing, Rules Governing Section 2255 Cases 8(a) and (b), and that the motion should be denied.

## I.  BACKGROUND

On March 1, 2000, a federal grand jury, sitting in the District of Oregon, returned a twenty-three court second superseding indictment against the defendant

and three co-defendants. (R85-1-attachment 2).[1]   On April 19, 2004, a criminal complaint was filed against the defendant in the Northern District of Florida and a warrant was issued for his arrest. (R54-1; R54-2).   The charges in both cases stemmed from a fraudulent check cashing and money laundering scheme.   The defendant was arrested on April 12, 2004, and on May 4, 2004, a federal grand jury, sitting in the Northern District of Florida, returned a 117 count indictment against the defendant and six co-defendants.  (R54-5; R54-7).   The Florida indictment charged the defendant in Counts One through 73 with bank fraud in violation of 18 U.S.C. §§ 2 and 1344; and in Count 117 with conspiracy to commit money laundering in violation of 18 U.S.C. §§ 1956(a)(1) and (h). (R54-7).   The Oregon indictment charged the defendant in Count One with conspiracy to commit bank fraud in violation of 18 U.S.C. §§ 2 and 371; and in Counts Three through 13 with bank fraud in violation of 18 U.S.C. §§ 2 and 1344.  (R85-1-attachment 2).   On June 29, 2004, the defendant pleaded guilty to Counts One through 73 and Count 117 of the Florida indictment pursuant to a written plea and cooperation agreement. (R54-101; R54-159-5, 40).  On August 13, 2004, the defendant pleaded guilty to Counts One and Three through 13 of the Oregon indictment without a written agreement. (R85-10-5-7, 10, 37).   On November 3, 2004, the defendant's then-lawyer, Donald Sheehan, filed a motion to withdraw after defendant questioned his advice regarding the plea, which the court granted after a hearing.  (R54-155; R54-157; R54-160; R85-12).

---

[1]On August 9, 2004, jurisdiction over the defendant in the Oregon case was transferred to this court and assigned Northern District of Florida case number 3:04-cr85/RV. (R85-1). The court ultimately conducted a joint sentencing hearing and entered a single judgment regarding case number 3:04cr85/RV and the case originally brought against the defendant in the Northern District of Florida, case number 3:04cr54/RV. (R54-177; R54-186; R54-188; R85-23; R-85-34; R85-35). The defendant filed a notice of appeal regarding both cases, (R54-178; R85-27), and the Eleventh Circuit affirmed the judgment and sentence in both cases. *United States v. Luong*, 172 Fed.Appx. 284, 286-292 (11th Cir. 2005).  In most instances henceforth, the court will adopt the form of citation used by the government in its response:  record citations will begin with the designation "54" or "85" to indicate whether the record regarding the case initiated in Florida or the case initiated in Oregon is being cited. The "54" or "85" designation will be followed by a citation to the document in that record, and if appropriate, the page(s).

On April 5, 2005, the defendant, through his new attorney, Sharon Wilson, filed a motion to withdraw his guilty pleas to counts 51-71 and count 117 of the Florida indictment.  (R54-171).  On April 5, 2005, the government filed a response to the defendant's motion to withdraw his guilty pleas to those counts. (R54-172).  On April 6, 2005, the court held a hearing on the defendant's motion, at which time the defendant stated that he also wished to withdraw his pleas to the Oregon indictment. (R54-185-2-3; R85-33-2-3).  After considering the testimony and evidence, the court denied the defendant's motions to withdraw his guilty pleas. (R54-175; R54-185-39-46; R85-21; R85-33-39-46).

On April 7, 2005, the court sentenced the defendant to concurrent terms of 136 months imprisonment as to all the counts to which the defendant pleaded guilty, except Count One of the Oregon indictment. (R54-177-3; R54-16-55-56; R54-188-3; R85-23-3; R85-34-55-56; R85-35-3).[2] As this count, the court sentenced the defendant to a concurrent term of 60 months imprisonment, which was the statutory maximum for that count. (R54-177-3; R54-186-55-56; R54-188-3; R85-23-3; R85-34-55-56; R85-35-3).

At both the June 29, 2004, hearing regarding the defendant's plea in the Florida case, and the August 13, 2004, hearing regarding the defendant's plea in the Oregon case, the court had the defendant provide information about his life history and personal background. (R54-159-5-9; R85-10-11-15).  At both hearings the court explained the defendant's rights to him, and the defendant waived his rights and testified that he wished to plead guilty.  (R54-159-9-12, 40; R85-10-15-19, 37).  At both hearings the defendant testified that he had discussed the charges against him with his lawyer and that he understood the charges.  (R54-159-12-13; R85-10-19-21).  At

---

[2] At page 55 of the sentencing transcript, the court's pronouncement of sentence was transcribed as being 160 months imprisonment as to all counts except Count One of the Oregon indictment; however, the rest of the transcript, as well as the judgment and amended judgment, clarify that the defendant's sentence as to those counts was 136 months imprisonment. (R54-177-3; R54-186-55-56; R54-188-3; R85-23-3; R85-34-55-56; R85-35-3).

both hearings the court explained to the defendant the elements of the crimes to which the defendant was pleading guilty, and the defendant testified that he understood the elements of the crimes. (R54-159-13-17; R85-10-19-22). At both hearings the court advised the defendant of the penalties he faced if he pleaded guilty, and the defendant stated that he understood the potential penalties he could receive. (R54-159-31-33; R85-10-30-32).

At the plea hearing on the Florida indictment the defendant testified that he had had an opportunity to discuss with his attorney how the Sentencing Guidelines might apply to his case. (R54-159-33). The defendant testified that he understood that the Guidelines were very complicated, might involve as many as 40 or more factors, and that neither the court nor the defendant's attorney could tell him exactly what his Guideline range would turn out to be. (*Id*.). The defendant testified that he understood that the sentencing decision was the court's decision and neither the government nor the defendant's attorney could promise or guarantee him a particular sentence. (R54-159-33-34). The defendant testified that he understood that if the court's sentence was more severe than he expected that he would still be bound by his guilty plea and would have no right to withdraw that plea. (R54-159-34).

The defendant entered a plea and cooperation agreement regarding the Florida indictment. (R54-101). The agreement was entered on June 29, 2004, shortly after the Supreme Court decided *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531 (2004). (R54-101; R54-159-2-5). The agreement provided that the court would resolve the amount of loss and the application of any Guideline enhancements using a preponderance of the evidence standard. (R54-101-3-4; R54-159-2-5, 35, 38). The defendant testified that he had carefully read the plea and cooperation agreement, had gone over it with his lawyer and understood its terms and conditions. (R54-159-35). The defendant's lawyer stated that the defendant had inquired of him what the court would determine his Guideline range to be, that the defendant's

lawyer could not answer such an inquiry, that *Blakely* perhaps meant the defendant had a right to have a jury determine the amount of loss, but that the defendant agreed the court would make that determination under the preponderance of the evidence standard.  (R54-159-36-37).

The following colloquy then occurred:

THE COURT: Well, I want him to know. Mr. Luong, there are as many as 40 or 50 different factors that must be taken into account, all of which may result in adjustments, either upward or downward in the offense level calculations. Do you understand that it's a very complex matter?

THE DEFENDANT: Yes, sir.

THE COURT: Including your role in the offense, any number of other things including the amount involved, the number of victims, any number of things. All of these are things that come into play. Do you understand that?

THE DEFENDANT: Yes, sir.

(R54-159-37).

At the plea hearing on the Oregon indictment the defendant testified that he had had an opportunity to discuss how the Sentencing Guidelines might apply to his case with his attorney.  (R85-10-32).  The defendant testified that he understood that neither his attorney nor the district court could tell him exactly what his Guideline range would be.  (*Id.*).  The defendant testified that he understood that the probation office would make calculations, that he and the government would have an opportunity to object to the calculations, and that the district court would rule on the objections.  (R85-10-32-33).  Then the following colloquy occurred:

THE COURT: The important thing that I want you to know is that neither your attorney nor the Government can promise or guarantee you a particular sentence, because the sentencing decision is my decision, and if my decision results in a sentence that is more severe than you expect, you are still bound by your guilty plea, do you understand that?

THE DEFENDANT: Yes, sir.

(R85-10-33).

At both plea hearings the defendant testified that no one had made any promises or threats that induced him to plead guilty.  (R54-159-38; R85-10-34-35). At both hearings the defendant testified that he had had enough time to discuss his case fully with his attorney and that he had done so.  (R54-159-38; R85-10-35).  At both hearings the defendant testified that he was satisfied with the way his attorney had advised him with regard to the case.  (R54-159-38-39; R85-10-35-36).  Near the conclusion of both hearings the defendant testified that he had no questions about his case.  (R54-159-39; R85-10-36).  The court concluded both hearings by finding that the defendant understood the charges, appreciated the consequences of his guilty plea, and made his decision to plea knowingly and voluntarily, and the court then accepted the defendant's guilty pleas.  (R54-159-39-40; R85-10-36-37).

The defendant's written motion to withdraw his guilty plea, which moved to withdraw only the defendant's plea to Counts 51-71 and 117 of the Florida indictment, alleged that the defendant was not given adequate information about the case and did not fully understand the consequences of his plea.  (R54-171; R85-17). At the hearing on the motion to withdraw his guilty plea, where the defendant also orally moved to withdraw his plea to the Oregon indictment, the defendant testified that he did not really understand the indictment.  (R54-185-2-4; R85-33-2-4).  The defendant testified that his attorney discussed what relevant conduct was, but the defendant really did not understand what it meant.  (R54-185-6-7; R85-33-6-7).  The defendant testified that he thought he would be held responsible for an amount of loss that was "around $400,000."  (R54-185-7-8; R85-33-7-8).

On cross-examination the defendant admitted that when he entered his plea he was told that the judge would determine the amount of loss.  (R54-185-10; R85-33-10). The defendant admitted that the judge had told him that under the Guidelines no one could predict for the defendant what his sentence would be. (R54-185-13; R-85-33-13).  The defendant admitted that his attorney told the judge

that he and the defendant wanted the judge to determine the amount of loss for which the defendant would be held responsible, and the defendant admitted that he told the court that that was true.  (R54-185-14; R54-33-14).

Mr. Sheehan, the defendant's lawyer at the time of his guilty pleas, testified that the defendant had been interested in the loss figure and wanted Mr. Sheehan to come up with a number, and Mr. Sheehan told the defendant he could not do that. (R54-185-30-32; R85-33-30-32). Mr. Sheehan testified regarding his discussions with the defendant and that he had explained the consequences and dangers of pleading guilty to the defendant.  (R54-185-32-37; R85-33-32-37).  Mr. Sheehan testified that he was sure that the defendant understood the terms and consequences of his plea, and was sure that by the time of his plea the defendant understood the concept of relevant conduct.  (R54-185-32-37; R85-33-32-37).

The court denied the defendant's motion to withdraw his guilty pleas, making detailed findings of fact . (R54-175; R54-185-39-46; R85-21; R85-33-39-46).  The court specifically discussed Eleventh Circuit law regarding motions to withdraw guilty pleas and the four-part test the Eleventh Circuit enunciated in cases such as *United States v. Cesal*, 391 F.3d 1172 (11th Cir. 2004)(per curiam), vacated on other grounds, ___ U.S. ___, 125 S.Ct. 2553 (2005) and *United States v. Freixas*, 332 F.3d 1314 (11th Cir. 2003). (R54-185-39-40, 42-46; R85-33-39-40, 42-46).  The court found that: (1) close assistance of counsel had been available to the defendant; (2) it had been explained in detail to the defendant that the court would determine the amount of loss, the defendant would be bound by that, and that "I [the court] am absolutely positive and convinced that there was no misunderstanding that the defendant certainly made his entry of guilty pleas in both of these cases knowingly and voluntarily;" (3) with respect to judicial resources, while it would be difficult to try the case, the court would have no problem trying it; and (4) the government, however, would be prejudiced if the court allowed the defendant to withdraw his plea, especially given the extensive number of witnesses the government would

have to bring in to try the case.  (R54-185-42-46; R85-33-42-46).  **Accordingly, the court denied the defendant's motion to withdraw his guilty pleas.  (R54-185-46; R85-33-46).**

A PSR was prepared prior to sentencing.  In this report, defendant's base offense level was 27, taking into account the nature of the offense conduct, the quantity of loss for which he was to be held accountable,[3] and the fact that unauthorized transfer devices were used.  (PSR ¶ 135).  After adjustments for his role in the offense, acceptance of responsibility, and the fact that he was convicted of a racketeering offense, his total offense level was 30.  (PSR ¶¶ 136-142).

Although defendant had no adult criminal convictions, his criminal history category was III based on several juvenile convictions.  (PSR ¶ 150).  The applicable advisory guidelines range was therefore 121-151 months.  At sentencing, counsel questioned whether the juvenile convictions could properly be scored due to the lapse of time, and the court found they could.  (R54-186-14).  The court heard testimony and argument on the amount of loss and defendant's role in the offense and overruled counsel's objection to the role adjustment.  (R54-186-45).  The government objected to the acceptance of responsibility adjustment based on defendant's testimony at the hearing on his motion to withdraw his plea, but the court allowed this adjustment to stand.  (R54-186-47).  Defendant was sentenced to a term of 136 months imprisonment, at the midpoint of the advisory guidelines range, and a five year term of supervised release, he was assessed an $8,600 special monetary assessment, and he was ordered to pay restitution in the amount of $493,986.57.

On appeal, defendant challenged both his conviction and sentence, including several claims not raised in the district court.  Regarding his conviction, defendant argued the district court abused its discretion by not granting his motion to

---

[3]Defendant was held accountable for all checks (passed and attempted) dating back to 1998, totaling $6,854,842.07.  (PSR ¶ 117)

withdraw his plea as to some of the charges, because he did not enter it knowingly. In regard to his sentence, defendant made three general arguments.  First, he argued that the district court should have used a clear-and-convincing standard instead of a preponderance-of-the-evidence standard for establishing the facts that gave rise to his sentence.  Second, he claimed that his rights under the Confrontation Clause were violated, because the court considered evidence summarized by the government without giving him the opportunity to confront the witnesses whose information was the basis for the summary.  Third, defendant argued that the district court should have made a sua sponte downward departure, because his criminal history category was overstated based on his juvenile convictions.  Also regarding his sentence, Luong appealed the application of several sentencing guidelines. First, he claimed that the district court erred in determining his responsibility for the amount of loss, because it did not provide a critical analysis of the dollar amount. Second, Luong argued that the district court erred when it applied a two-level increase under U.S.S.G. § 2B1.1(b)(9) (2003) for the use of unauthorized access devices, because he did not qualify for the increase.  Finally, defendant contended that the district court erred in applying a four-level enhancement under U.S.S.G. § 3B1.1(a) for his leadership role, because the evidence was insufficient to support it. As a final grounds for appeal, Luong argued that the district court imposed an unreasonable sentence, because it incorrectly applied the factors under 18 U.S.C. § 3553(a).  *United States v. Luong*, 172 Fed. Appx. 284, 287-288 (11th Cir. 2006).

> After review of the record, the Eleventh Circuit held that:
>
> (1) defendant's guilty plea was knowing and voluntary;
>
> (2) preponderance of the evidence standard applied to calculation of defendant's sentencing range;
>
> (3) sentencing court's consideration of reliable hearsay evidence did not violate defendant's Confrontation Clause rights;

(4) defendant's prior juvenile convictions were properly included in determining his criminal history category;

(5) evidence was sufficient to support finding that amount of loss for which defendant was responsible exceeded $2,500,000; and

(6) defendant's sentence was reasonable.

*United States v. Luong ,*172 Fed.Appx. 284, 2006 WL 760264 (11th Cir. 2006).

In the present motion, defendant raises 13 claims of ineffective assistance of counsel.  The government opposes the motion in its entirety.

## II.  LEGAL ANALYSIS

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.  A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law or (4) is otherwise subject to collateral attack.  28 U.S.C. § 2255; *Thomas v. Crosby,* 371 F.3d 782, 811 (11th Cir. 2004); *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).  "[A] non-constitutional error that may justify reversal on direct appeal does not generally support a collateral attack on a final judgment, unless the error (1) could not have been raised on direct appeal and (2) would, if condoned, result in a complete miscarriage of justice."  *Lynn*, 365 F.3d at 1232-33 (citations omitted); *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962) (error of law does not provide basis for collateral attack unless

claimed error constituted a "fundamental defect which inherently results in a complete miscarriage of justice."). The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2678, 2649, 91 L. Ed. 2d 397 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent. . . ."

Although section 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief," a defendant must support his allegations with at least a proffer of some credible supporting evidence. *See Chandler v. McDonough,* 471 F.3d 1360 (11th Cir. 2006) (citing *Drew v. Dept. of Corrections,* 297 F.3d 1278, 1293 (11th Cir. 2002) (referring to "our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support"); *Hill v. Moore,* 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief."); *Ferguson v. United States*, 699 F.2d 1071, 1072 (11th Cir. 1983). A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004); *Tejada v. Dugger,* 941 F.2d 1551, 1559 (11th Cir. 1991); *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted). Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing. *Lynn*, 365 F.3d at 1239.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. *Massaro v. United States,* 538 U.S. 500, 503, 123 S.Ct. 1690, 1693, 155 L.Ed.2d 714 (2003); *see also United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002); *United States v. Jiminez*, 983 F.2d 1020, 1022, n. 1

(11th Cir. 1993).  To show a violation of his constitutional right to counsel, defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d (1984); *Williams v. Taylor*, 529 U.S. 362, 390, 120 S.Ct. 1495, 1511, 146 L.Ed.2d 389 (2000); *Gaskin v. Secretary, Dept. of Corrections,*  494 F.3d 997, 1002  (11th Cir. 2007). "*Strickland's* two-part test also applies where a prisoner contends ineffective assistance led him or her to enter an improvident guilty plea."  *Yordan v. Dugger,* 909 F.2d 474, 477 (11th Cir. 1990) (citing  *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)).   In applying *Strickland*, the court may dispose of an ineffective assistance claim if defendant fails to carry his burden on either of the two prongs.  466 U.S. at 697, 104 S.Ct. at 2069.

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688, 104 S.Ct. at 2065; *see also Dingle v. Secretary for Dept. of Corrections,* 480 F.3d 1092, 1099 (11th Cir. 2007)*; Atkins v. Singletary*, 965 F.2d 952 (11th  Cir. 1992).  "[R]eviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990) (citing *Harich v. Dugger*, 844 F.2d 1464, 1469 (11th Cir. 1988); *Dingle v. Secretary for Dept. of Corrections,* 480 F.3d 1092, 1099 (11th Cir. 2007)*; Chandler v. United States,* 218 F.3d 1305, 1314 (11th Cir. 2000); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation")). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*,  466 U.S. at 689, 104 S.Ct. at 2065.   To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States,* 496 F.3d 1270, 1281 (11th Cir. 2007); *United State*

*v. Freixas*, 332 F.3d 1314, 1319-1320 (11th Cir. 2003); (quoting *Brownlee v. Haley*, 306 F.3d 1043, 1059 (11th Cir. 2002)(quoting *Strickland*, 466 U.S. at 687, 689-90, 104 S.Ct. at 2064-66 and *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc)).   When examining the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect."  *Chandler*, 218 F.3d at 1316 n. 18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different.  *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.  For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him."  *Lockhart v. Fretwell*, 506 U.S. 364, 369-70, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).   Defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687).   Or in the case of alleged sentencing errors, defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531 U.S. 198, 203-04, 121 S.Ct. 696, 700-01, 148 L.Ed.2d 604 (2001).   A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance."  *Id.*

To establish ineffective assistance, defendant must provide factual support for his contentions regarding counsel's performance.  *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987).  Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test.  *Wilson v. United States,* 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899 (11th

Cir. 1990) (citing *Blackledge*, 431 U.S. at 74, 97 S.Ct. at 1629); *United States v. Ross*, 147 Fed.Appx. 936, 939 (11th Cir. 2005).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000). This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Dingle*, 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" *Dingle*, 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)).

### 1. Failure to provide sufficient discovery

Defendant contends that Mr. Sheehan failed to provide sufficient discovery to allow him to make informed and intelligent decisions regarding whether to enter a guilty plea or proceed to trial. Defendant states that because he did not receive adequate discovery, he was unaware of the government's perception of his level of culpability in this case until after the entry of his plea. As part of this claim, he contends that counsel failed to explain the definition and significance of the term "relevant conduct," and that consequently he reasonably believed that he would be responsible only for the factual matters set forth in each indictment.

With respect to his level of culpability, defendant refers to paragraphs 116 and 117 of the PSR which indicates that at least 3400 checks totaling $6,854,842.07 and dating back to 1998 were at issue. Defendant maintains that he first became aware that all of these checks would be attributed to him only after reviewing the PSR. He claims that he told counsel that he should not have been held accountable for the

checks from the years 1999 to 2001, and noted that the Oregon indictment alleged a loss of $425,625.97, not an excess of six million dollars.  Thus, he concludes that he should not have been accountable for checks in excess of those charge in the indictment.  See *United States v. Hunter*, 323 F.3d 1314, 1319 (11th Cir. 2003) (to determine a defendant's liability, the court must make individualized findings concerning the scope of criminal activity undertaken by a particular defendant); *United States v. Hansley*, 54 F.3d 709, 713-714 (11th Cir. 1995) (same; entire scope of conspiracy can be attributed to leader, individualized findings should be made with respect to other defendants); *United States v. Reese*, 67 F.3d 903, 909 (11th Cir. 1995) (court should make individualized findings as to defendant's involvement in conspiracy); *United States v. Fuentes*, 991 F.2d 700 (11th Cir. 1993)(defendant can only be held accountable for acts committed in furtherance of conspiracy that are reasonably forseeable).

Attorney Sheehan states in his affidavit that he was provided "open file" discovery by the Office of the United States Attorney.  (R-85-56,exh. C at 2).  Counsel states that he provided the defendant with the discovery documents from case 3:04cr54, and noted that defendant was present at the detention hearing where the government disclosed significant evidence against him.  (*Id.*).  A letter from counsel to the defendant dated November 3, 2004 also indicates that defendant was provided with discovery material.  (R-85-56, exh. D).  In this letter, counsel set forth in detail conversations he had had with the defendant regarding his case, including his constitutional rights, the strength of the government's case against him, his options, and sentencing matters.  (*Id.*).  Counsel reiterated that he told the defendant that the amount of loss would affect his sentence, and that at the time he entered the plea, the exact loss calculations were unknown.  Counsel also maintains that he fully discussed with his client, prior to entry of the plea, that the defendant's criminal conduct in Oregon would affect the loss calculation in the Florida case.  (*Id.*).  At both rearraignment proceedings, the defendant testified under oath that he had had

enough time to discuss his case fully with his attorney, that he had done so, and that he had no questions about his case.[4]  (R54-159-38-39; R85-10-35-36).

The undercurrent of defendant's argument is his dissatisfaction with the scope of conduct for which he was ultimately held accountable, and the ensuing sentence.  This issue was addressed by the Eleventh Circuit on appeal. The court stated as follows:

> The crux of Luong's argument is that he did not knowingly enter his plea because he did not understand the scope of conduct that the district court would consider, and, therefore, he did not understand the gravity of his possible sentence. However, at both plea hearings Luong was told that his relevant conduct could not be determined until the PSI was generated and that he would not be able to withdraw his plea if he received a more severe sentence than he thought he would receive. He was also informed that his maximum sentence was thirty years.
>
> Luong had the benefit of close assistance of counsel during his plea hearing, and the government introduced evidence regarding the resources conserved and prejudice avoided by denying the motion to withdraw the plea. Because Luong knew his maximum sentence and because he knowingly entered his plea, the district court did not abuse its discretion in denying his motion to withdraw it.

*United States v. Luong,* 172 Fed.Appx. 284, 288-289 (11th Cir. 2006).  Therefore, defendant's claim that counsel was constitutionally ineffective for his failure to

---

[4]A defendant's statements during a Rule 11 colloquy as well as any findings made by the judge accepting the pleas constitute a formidable barrier in any subsequent collateral proceedings. *Blackledge v. Allison,* 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977); cf. *Holmes v. United States,* 876 F.2d 1545, 1550 (11th Cir. 1989) (trial court satisfied itself during Rule 11 colloquy of voluntary and understanding nature of plea).  Solemn declarations made under oath in open court carry a strong presumption of verity. *Blackledge,* 431 U.S. at 73-74, 97 S.Ct. at 1629*; United States v. Medlock,* 12 F.3d 185, 187 (11th Cir. 1994).  They are presumptively trustworthy and are considered conclusive absent compelling evidence showing otherwise. *Blackledge,* 431 U.S. at 73-74, 97 S.Ct. at 1629; *see also United States v. Gonzalez-Mercado,* 808 F.2d 796, 800 n.8 (11th Cir. 1987); *Downs-Morgan v. United States,* 765 F.2d 1534, 1541 n. 14 (11th Cir. 1985); *Potts v. Zant,* 638 F.2d 727, 750-51 (5th Cir. 1981) (citing *United States v. Sanderson,* 595 F.2d 1021 (5th Cir. 1979)); *Nguyen v. United States,* 114 F.3d 699, 703 (8th Cir. 1997); *United States v. Messino,* 55 F.3d 1241, 1248 (7th Cir. 1995); *United States v. Mims,* 928 F.2d 310, 313 (9th Cir. 1991); *United States v. DeFusco,* 949 F.2d 114, 119 (4th Cir. 1991).  Consequently, a defendant "bears a heavy burden to show his statements [under oath] were false." *United States v. Rogers,* 848 F.2d 166, 168 (11th Cir.1988); *United States v. Reid,* 2007 WL 4190403 (11th Cir. 2007) (unpublished; text in WESTLAW).

provide discovery materials, and that said failure affected defendant's decisions in this case is neither factually nor legally supported.  Even had there been additional discovery to provide, defendant was fully advised that the relevant conduct could not be determined until after the preparation of the PSI, and that he faced a sentence of 30 years, which was well in excess of the 136 month sentence he actually received.  Furthermore, as discussed below, the advisory guidelines range attributed to him as a result of the range of the offense conduct was wide enough in scope that even a significant reduction in the loss attributed to him would not have made a difference in his sentence.   He has not established counsel's constitutional deficiency in this regard.

2.  <u>Mis-advice regarding entry of a guilty plea</u>

Defendant argues that Mr. Sheehan was ineffective for advising him to enter a guilty plea to counts charged in the Second Superceding Indictment from Oregon that, he claims, had previously been dropped.

At the change of plea proceeding on June 29, 2004, defendant entered guilty pleas to counts 1-73 and count 117 of the Florida indictment.   During the proceedings, the government indicated to the Court that Oregon federal authorities had withdrawn their warrant with respect to the 1999 indictment, as they had been unable to locate the defendant and had apparently lost interest in the case.  (R-54-159-25).  Although defendant suggests that counsel advised him to enter a guilty plea to the charges in the Oregon indictment,[5] the record reflects that the converse is true.

Mr. Sheehan states in his affidavit that he recalls advising his client to "seriously consider not entering a guilty plea to any outstanding Oregon indicted

---

[5]Of interest, although not dispositive of the matter at hand, is the fact that the defendant "concealed" his involvement in the Oregon case to his attorney when they first met, never telling counsel that he had a similar indictment against him in another court that had been pending for five years, and that he had fled that state using a false name.  Counsel only learned of this information about his client at the detention hearing. (R85-56,exh. C at 3).

case," telling defendant "why don't you call their bluff."   (R-85-56, exh. C at 3).
According to Sheehan, he discussed defendant's options with him, including to wait
and do nothing in which case a hold might be placed on him, and to not enter a plea
and see whether the government was willing to take him back to Oregon.  Counsel
stated that defendant decided to enter a guilty plea to avoid a hold being placed
upon him and because he did not want to have to go back to Oregon to face
additional criminal charges because of his wife and children.  *Id.*   Defendant's
assertion that the charges in Oregon were "dropped" is factually incorrect.  Counsel
asserts that the Oregon indictment was never dismissed and that AUSA Preisser
made it abundantly clear that the federal Oregon case would not "go away;" the
conduct would be taken into consideration in the Florida case and once Oregon
authorities learned of the fugitive defendant's apprehension in Florida, the arrest
warrant could easily be reactivated.  In any event, counsel and his client had a
conversation about the defendant's options, and defendant made the choice to enter
a guilty plea.  Defendant has not attempted to contradict counsel's recollection of
events.  Even if he had, *"Strickland's* two-part test also applies where a prisoner
contends ineffective assistance led him or her to enter an improvident guilty plea."
*Yordan v. Dugger,* 909 F.2d 474, 477 (11th Cir. 1990) (citing  *Hill v. Lockhart*, 474 U.S.
52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)).  And, defendant has not shown how he was
prejudiced by handling both pending criminal matters simultaneously in a single
forum.   He therefore has not established that counsel was constitutionally
ineffective.

3.  Mis-advice regarding use of juvenile convictions at sentencing

Defendant states that counsel failed to advise him that his prior juvenile
convictions could be used against him at sentencing.  Had counsel done so,
defendant contends he would have obtained relevant documentation that would

have proven that certain "convictions" did not qualify for enhancement purposes, so he would have received a lesser sentence.

Defendant states that he recently obtained documents from the State of California that establish that the convictions listed in paragraphs 146, 147 & 148 of the PSR, which were all part of docket 101847 in Santa Clara County Superior Court, in San Jose California, were "set aside and vacated and the case dismissed" on October 21, 1997.  Therefore, he argues, the PSR should have reflected that he had no criminal history, juvenile or otherwise.  The documents are appended to his reply.  (Doc. 258, exh. B). First, there is an Order of Discharge from the State of California Department of Youth Authority dated May 13, 1997 which indicates that defendant was discharged from the Youth Authority under Honorable Conditions.  (*Id.* at 1).  The second document is a letter from the Youth Authority Supervisor to the Presiding Judge of the Juvenile Court in San Jose, dated July 24, 1997, regarding the aforementioned Honorable Discharge, noting that because of the honorable discharge from parole, the court was required to set aside the verdict of guilty and dismiss the accusation against defendant.  (*Id.* at 2).  The third document is an Order of Dismissal issued by the Honorable Tom Edwards, Judge of the Superior Court in Juvenile Session, County of Santa Clara.  Stated therein is the fact that the accusatory action in case 101847 is "set aside and vacated and the case dismissed as provided by Sections 1179/1772 of the Welfare and Institutions Code of the State of California."  (*Id.* at 3).  The order is dated October 21, 1997.

The government did not address the vacatur of defendant's juvenile convictions in its response.  Instead, it noted that the validity of considering the defendant's prior juvenile convictions in calculating the defendant's criminal history was raised at sentencing, addressed by the probation officer who prepared the PSR, discussed by the government and the defendant, and resolved by the court in the government's favor.  (Doc. 56 at n.3).  In addition, the government noted that the Eleventh Circuit has already held that the defendant's juvenile convictions were

properly scored.  (Doc. 56 at 11, citing *United States v. Luong*, 172 Fed.Appx. 284, 290 (11th Cir. 2006) ("Finally, Luong seems to argue that the district court should not have counted prior juvenile convictions in determining his criminal history category, however such offenses are properly included. *See* U.S.S.G. § 4A1.1(b), 4A1.2(d)(2).") However, it does not appear that either the trial court or the Eleventh Circuit had before it the documents that are currently before this court showing that the convictions in question have been "vacated."

Under the guidelines, sentences that have been vacated or set aside are treated differently, depending on the underlying reason for the court's action. Application note 6 to § 4A1.2 of the guidelines provides that sentences resulting from convictions that have been reversed or vacated because of errors of law or because of subsequently discovered evidence exonerating the defendant, or that have been ruled constitutionally invalid in a prior case are not to be counted.  This does not appear to be the situation with respect to the defendant's juvenile convictions. Application note 10 applies to situations where the conviction has been set aside or the defendant has been pardoned.  It provides:

> A number of jurisdictions have various procedures pursuant to which previous convictions may be set aside or the defendant may be pardoned for reasons unrelated to innocence or errors of law e.g., in order to restore civil rights or to remove the stigmas associated with a criminal conviction.  Sentences resulting from such convictions are to be counted.  However, expunged convictions are not counted. § 4A1.2(j).

U.S.S.G. § 4A1.2, comment. (n.10).

At sentencing, defense counsel moved for a continuance due to errors in the PSR.  Defendant apparently told counsel that there was incorrect information about the dates he was released from confinement.  (Doc. 186/34 at 3).  The parties and the court engaged in a discussion about the date the defendant was released and discharged from parole.   The record does not reflect that defendant attempted to mention that the juvenile convictions had been dismissed.  It is clear both from the

discussion at sentencing and from the papers submitted, that defendant's convictions were vacated for reasons "unrelated to innocence or errors of law" and that the convictions were not "expunged."   Therefore, presentation of the information now before the court at sentencing would not have changed the outcome of the case.[6]  And consequently, even assuming the truth of defendant's assertion that counsel failed to advise him that the convictions could be used against him, defendant has not shown that he was prejudiced.

### 4.  Failure to challenge criminal history category

Defendant next contends that counsel should have challenged one of his juvenile convictions because it was a Class B misdemeanor to which the guidelines do not apply. See §1B1.9 U.S.S.G.  He further asserts that the sentence for this and one other conviction had been completed outside the scope of the five year limitation period set forth in U.S.S.G. § 4A1.2(d)(2)(A) and (B).

With respect to the misdemeanor offense listed in paragraph 146 of the PSR, defendant has offered no proof that it was only a Class B misdemeanor.  The sentence imposed on this offense makes it eligible for scoring under a different section of the guidelines.   Guidelines sections 4A1.2(d)(2)(A) and (B) address offenses committed before age 18.  Subsection (A) provides that two points should be added for each sentence to confinement of at least sixty days if the defendant was released from such confinement within five years of his commencement of the instant offense, and subsection (B) provides that one point should be added for sentences not covered in section (A) that were imposed within five years of the defendant's commencement of the charged offense.  U.S.S.G. § 4A1.2(d)(2)(A) and (B).  The PSR reflects that defendant received a four month sentence on each misdemeanor count listed in paragraph 146, an eight month sentence on the felony

---

[6]The court also notes that defendant made no attempt to bring the fact that the convictions had been "vacated" to the attention of the court or counsel.

charge in paragraph 147 and a nine year sentence on the felony listed in paragraph 148, for a total term of 10 years, 8 months, 264 days CTS.  (PSR ¶¶ 146, 147 & 148). The district court determined at sentencing that the defendant had been released from confinement on the aggregated sentence[7] on these offenses on June 29, 1993, which was within five years from the commencement of the federally charged offenses.  Therefore, these convictions were properly scored.

5.   <u>Mis-advice regarding enhancement under § 2S1.1(b)(2)(B)</u>

Defendant asserts that counsel's performance was constitutionally deficient because counsel specifically failed to inform him that his sentence could be enhanced under § 2S1.1(b)(2)(B).  This section, which pertains to money laundering transactions, provides for an automatic two level increase if a defendant was convicted under title 18 U.S.C. § 1956, which was the offense charged in Count 117 of the Florida indictment.  Defendant states in his memorandum that counsel told him that his sentence could not be enhanced under this section.  He claims that had he known this, he would not have entered a guilty plea to Count 117 of the indictment.

The government does not specifically address counsel's advice about this particular guideline.  Instead it notes that the court explicitly told the defendant that determination of his guideline range would involve numerous factors and no one could tell him what his guideline range would be, and that counsel informed the defendant in writing that he could never predict the exact guideline offense level the defendant would receive prior to reviewing a PSR.

This court is well aware that it is the policy of the Office of the United States Attorney for this district not to plea bargain or offer partial pleas.  Thus, if defendant

---

[7]Defendant may be trying to suggest that the sentences for each of the paragraphs of the PSR should be considered separately, and that he completed the three four-month terms and the eight-month term more than five years before the date that the offense conduct began in the instant case.  Although the offenses were clearly charged separately, the sentencing and probation were aggregated, and thus the record does not support this possible interpretation.

had not wanted to enter a guilty plea with respect to only one of the charged offenses, he would have been required to go to trial on all of them.  In his reply brief, defendant makes a general assertion that but for Mr. Sheehan's ineffectiveness, he would not have entered pleas of guilty and would have taken the Florida indictment to trial.  In light of the abundance of evidence against him even at the time defendant decided to enter his plea, and defendant's expressed desire to get the case over with and resolve the Oregon case, the court finds this conclusory assertion to be lacking in probative value.

Finally, the court does not find defendant's assertion that counsel was constitutionally ineffective for allegedly providing specific misadvice regarding the application of § 2S1.1(b)(2)(B) to be well grounded in law or fact.  While credibility determinations are not the province of this court absent an evidentiary hearing, the court notes that defendant's alternative claims that he had  difficulty understanding legal concepts and that he would not have entered a plea had he been properly advised about the application of a specific provision of the guidelines, strain credulity, as does his suggestion that Attorney Sheehan, with twenty-two years of experience practicing criminal law, would have provided specific misadvice in this regard about such a clearcut guideline.   Defendant pleaded guilty to a violation of 18 U.S.C. § 1956, and this adjustment was plainly and clearly applicable.

### 6.  Motion to withdraw guilty plea

Defendant contends that counsel Sharon Wilson was ineffective in failing to review his motion to withdraw guilty plea with him, and in failing to file this motion in a timely fashion.  He maintains that each of the grounds of ineffective assistance of counsel that he raises in the instant motion should have been incorporated into Ms. Wilson's motion, but that Ms. Wilson filed the motion in a "perfunctory attempt to mollify" the defendant.  (R-54-251-8).  Defendant contends that when he entered his guilty pleas, he did not have sufficient information to make a voluntary, knowing,

and intelligent waiver of his constitutional right to a trial by jury or to enter a guilty plea.

Defendant's assertion about the "untimeliness" of the motion to withdraw the guilty plea is confusing, as the motion was rejected on its merits after a hearing and was not considered in any way to be untimely by the court.  In its opposition memorandum, the government argued that the defendant's motion appeared to be based upon his review of the PSR, as he had become fully aware of the government's knowledge about the scope of his role in the unlawful conduct, and had "buyer's remorse."  (R-85-18-10; R-85-33-41).  However, the district court denied the motion on the merits stating that it was "absolutely positive and convinced that there was no misunderstanding that the defendant certainly made his entry of guilty pleas in both of these cases knowingly and voluntarily." (R85-33-45).  This statement thus addresses the second portion of the defendant's claim.  The defendant challenged the district court's ruling on the knowing, voluntary nature of the plea on appeal and the appellate court upheld the district court's determination.  172 Fed. Appx. at 288.

Pursuant to Rule 11(d) of the Federal Rules of Criminal Procedure, in ruling on a motion to withdraw a guilty plea, the district court must consider: (1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; and (4) whether the government would be prejudiced if the defendant were allowed to withdraw the plea. *United States v. Freixas*, 332 F.3d 1314, 1316 (11th Cir.2003).  Defendant contends that he has met his burden on factors one, two and three.  However, the Eleventh Circuit specifically found that the defendant had close assistance of counsel during his plea hearing, he knew his maximum sentence and he knowingly entered his plea, and there was record evidence with respect to the conservation of judicial resources and prejudice to the defendant.  172 Fed.Appx. at 288-289.  The law is well established that a district court need not reconsider issues raised in a section 2255

motion which have been resolved on direct appeal. *United States v. Nyhuis,* **211 F.3d 1340, 1343 (11th Cir. 2000);** *Mills v. United States***, 36 F.3d 1052, 1056 (11th Cir. 1994),** *cert. denied***, 514 U.S. 1112, 115 S.Ct. 1966, 131 L.Ed.2d 856 (1995);** *United States v. Rowan***, 663 F.2d 1034, 1035 (11th Cir. 1981);** *Hidalgo v. United States***, 138 Fed.Appx. 290 (11th Cir. 2005).   Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255.** *Nyhuis***, 211 F.3d at 1343 (quotation omitted).   Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised.** *Sanders v. United States***, 373 U.S. 1, 16, 83 S.Ct. 1068, 1077, 10 L.Ed.2d 148 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").   Defendant's dissatisfaction with the rulings in the trial and appellate court do not entitle him either to relitigate his claim, or entitle him to relief.**

## 7. <u>Failure to review PSR</u>

**Defendant contends that each of his two attorneys was ineffective in failing to go over the facts alleged in the PSR with him so that he could file relevant and responsive objections.   He maintains that Attorney Sheehan never discussed the PSR or any proposed objections with his client nor did Sheehan incorporate any of the objections his client proposed.   In his memorandum, defendant alleges that he had "numerous objections that he desired to incorporate once he began to comprehend the position the government was taking regarding his participation in the matters alleged in the Florida indictment."   He faults Mr. Sheehan for "unilaterally" filing objections to the PSR, after he sent counsel a letter dated October 28, 2004, wherein he set forth the objections he believed to be relevant.   A letter dated October 24, 2004 is appended to the defendant's reply brief.  (R54- 258, exh. 1).  Attached to this letter is an "itemized list of errors" from his  PSR.  First,**

defendant denies knowing most of the co-defendants and anyone involved in related cases.  With respect to the charged offenses, he enumerates specific paragraphs of the PSR and states that they are "false" or that he states "do not know–have no involvement."  Among the paragraphs defendant claims are false are two paragraphs that set forth the date and contents of the respective indictments (¶ 1, 13), a paragraph including a general description of the conspiracy and amount of loss (¶ 25).  He also claimed that many paragraphs containing information provided to investigators by other conspirators, including a description of the operation of the conspiracy and the involvement of the participants were either false or denied knowledge or involvement.  (¶¶ 29, 30, 31, 33, 35-38, 40-44, 48-82, 89-90, 92, 101-104, 107-109, 111-112, 116-117, 119-122).  In short, defendant claimed that the facts set forth in virtually every paragraph of the PSR in which he was mentioned were false, and denied involvement in virtually each paragraph in which he was not mentioned.[8] He also denied the truth of the victims' requests for restitution (¶ 125-127, 129).  He further stated that his base offense level was false (¶ 135), that the application of the §2S1.1(b)(2)(B) adjustment was false (¶ 136), that the adjustment for role in the offense pursuant to §3B1.1(b) was false (¶ 138), that the paragraphs relating to his juvenile convictions, including the calculation of criminal history points were false (¶¶146-148, 150), that information relating to a traffic infraction was false (¶ 151), that an alias he was identified as using was false (¶ 168), that a summary of a credit report in his name was false (¶ 174), and finally that the probation officer's statement that the officer had not identified any factors concerning the offense or the offender which would warrant a departure from the prescribed guideline range, absent a motion from the government for substantial assistance pursuant to §5K1.1 was false.  (¶ 194).  Defendant concluded his letter to counsel by saying that he felt he

---

[8]Interestingly, defendant did not deny the paragraph setting forth the factual allegations underlying the money laundering claim, paragraph 123.

had been misled and that he had pleaded guilty to one set of crimes, but the PSR was holding him accountable for more serious crimes that he did not commit.

Mr. Sheehan avers in his affidavit that he met with the defendant and discussed the PSR with him.  (R85-56, exh. C at 5).  The government notes that Mr. Sheehan filed "extensive objections and memoranda regarding the PSR."  (R54-153, 154).  In the written objections filed with the court, defendant, through counsel, objected based on the *Blakely*[9] case, and objected to the base offense level, to the calculation of loss (and asked that the government be required to produce checks upon which the amount of loss was based), to the two level adjustment pursuant to § 2S1.1, to the adjustment for his role in the offense, to his total offense level, and to his criminal history category. (R54-153).  The defendant argued that reasonable foreseeability was not alone sufficient to establish accountability, and that there was insufficient evidence to support a finding of the amount of loss claimed.  *Id.*

At the sentencing hearing, the court specifically asked the defendant about the accuracy of the PSR.  (R-186-9-10).  Defendant indicated that his personal history and prior criminal convictions were accurate, and that other than the amount of loss and the application of the leadership role, he "guessed" that everything else was accurate.

In his reply memorandum, defendant states that it does not appear that counsel incorporated any of the objections the defendant suggested in his letter dated October 24, 2004 to counsel, in particular several unidentified "factual issues . . . which should have been incorporated in the PSR." (R-54-258-2-3).  Defendant faults counsel for preferring to file "legal" objections, but he does not explain how the alleged factual objections that he suggests counsel should have raised would have changed the outcome of the proceedings.  Defendant has not shown he is entitled to relief.

---

[9] *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

8.  Failure to challenge loss amounts

Defendant asserts that counsel was ineffective in failing to "properly" challenge the enhancement regarding the alleged financial loss amounts attributed to him.  He maintains that neither of his attorneys made any "serious effort" to minimize his exposure to a substantial sentence, but rather "adopted" the position of the government.  Had this been conveyed to him, he asserts that he would have "immediately jettisoned the notion that a plea was in his best interest."  (R54-251 at 11).

As noted above, the defense objection to the loss amount was addressed at sentencing.  The PSR had recommended that the defendant should receive an 18-level enhancement because the amount of loss was greater than $2,500,000 and less than $7,000,000. (PSR ¶ 135).  Both defense counsel objected to the loss figure and the matter was addressed in great detail at sentencing. (R54-186-9, 11-12, 15-32, 39-45; R85-34-9, 11-12, 15-32, 39-45).  The evidence established that the defendant was responsible for a loss amount of $5,800,000. (R54-186-15-26, 44-45; R85-34-15-26, 45).  Nonetheless, the court found that to be a "huge amount" and commented that even if it held defendant accountable for just half of that amount, defendant would still be in the same loss category.  (R54-186-44; R85-34-44).  It ultimately held defendant accountable for guideline calculation purposes for an amount of loss "equal to or in excess of $2,937,445."  *Id.*  On appeal the Eleventh Circuit found that the court's "arbitrarily halving" the proven amount of loss was error.  172 Fed.Appx. at 291 n.1.  The appellate court found there was factual support in the record for an amount of loss of $5.8 million, but there was no support for the district court's assessment of loss in an amount of $2.9 million.  *Id.*  The Eleventh Circuit concluded, however, that because both $2.9 million and $5.8 million fall within the same specific offense characteristic increase, the error was harmless.  *Id.*  In the instant motion, defendant has not suggested what arguments counsel could or should have made to show <u>any</u> reduction in the amount of loss, much less an

amount sufficient to affect his offense level, and thus his sentence.  Having failed to show either deficient performance or prejudice under *Strickland*, he is not entitled to relief.

9.  <u>Failure to advise defendant of critical elements of offense</u>

Defendant maintains that counsel failed to advise him of the nature of the critical elements of the offenses to which he was entering guilty pleas.  Because of this, he contends that his guilty pleas were entered without sufficient knowledge, thus making the pleas involuntary.  Counsel stated in his affidavit that he explained to his client the elements of the offenses to which defendant intended to enter a guilty plea.  (R85-56, exh. C at 4).  He told defendant that the government had to prove each and every element of the offense beyond a reasonable doubt at trial.  Because the evidence against the defendant was overwhelming, and his co-defendants had agreed to testify against him, it was clear that the government could prove its case.  *Id.*  Furthermore, at both plea hearings, the court explained to the defendant the elements of the offenses to which he was pleading guilty, and the defendant testified under oath that he understood the elements of the offenses.  (R54-159-13-17; R85-10-19-22).  Solemn declarations made under oath in open court carry a strong presumption of verity.  See *Blackledge v. Allison*, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977); *Holmes v. United States*, 876 F.2d 1545, 1550 (11th Cir. 1989) (trial court satisfied itself during Rule 11 colloquy of voluntary and understanding nature of plea).  Finally, the knowing and voluntary nature of the pleas was considered, albeit in a slightly different context, and upheld on appeal.  Defendant's quest for relief on this ground must fail.

10.  <u>Sentencing failures</u>

Defendant contends that counsel Ms. Wilson was ineffective in failing to put on "even a rudimentary case" at sentencing, by failing to object to any of the

government's evidence, and by failing to call or cross-examine any government's witness. Defendant does not suggest which witnesses should have been called or what their testimony might have been. His specific challenge to counsel's failure to object to the introduction of summary charts is addressed below.

## 11. Failure to object to hearsay charts

As a separate ground for relief, defendant asserts that Ms. Wilson was ineffective because she failed to object specifically to the unreliable hearsay charts offered by the government at sentencing. Defendant contended that the charts presented by the government at sentencing to illustrate the loss for which he should be held accountable were not based on evidence presented at trial, but only agent testimony at the sentencing hearing. The defendant contends that reliance on this "inaccurate" chart led the court to conclude that his base offense level was 27. The government responds that as a factual matter, it agrees that Ms. Wilson did not object to the admission of the summary charts. It argues that counsel did not provide constitutionally ineffective assistance by her failure to object because the amounts in the charts were supported by the evidence. *Cf. United States v. Malol*, 476 F.3d 1283 (11th Cir. 2007). Furthermore, summaries, whether in the form of charts or otherwise, are specifically admissible under Fed.R.Evid. 1006. See also *United States v. Richardson*, 233 F.3d 1285, 1293-94 (11th Cir. 2000).

In addition, the mere fact that the chart was comprised of "hearsay" is insufficient to render it inadmissible. The law in the Eleventh Circuit is well-established that the district court can consider reliable hearsay statements at sentencing. *United States v. Patti,* 337 F.3d 1317, 1326 (11th Cir. 2003) (citing *United States v. Wilson*, 183 F.3d 1291, 1301 (11th Cir. 1999) ("A court may consider any information (including hearsay), regardless of its admissibility at trial, in determining whether factors exist that would enhance a defendant's sentence, provided that the information is sufficiently reliable.")); *see also United States v. Chau,* 426 F.3d 1318

(11th Cir. 2005); *United States v. Zlatogur,* 271 F.3d 1025, 1031 (11th Cir. 2001); *United States v. Anderton*, 136 F.3d 747, 751 (11th Cir. 1998) (per curiam); *United States v. Castellanos*, 904 F.2d 1490, 1495 (11th Cir. 1990).  The district court may rely upon such evidence "as long as the evidence has sufficient indicia of reliability, the court makes explicit findings of fact as to credibility, and the defendant has an opportunity to rebut the evidence.  *United States v. Patti,* 337 F.3d 1317, 1326 (11th Cir. 2003) *(quoting United States v. Anderton*, 136 F.3d 747, 751 (11th Cir. 1998) (per curiam)).  In this case, defendant complains that counsel did not challenge this evidence, but he fails to suggest precisely what challenge should have been made and how the outcome of the proceedings would have been different, and therefore has not established that he should prevail on this claim.

12. <u>Failure to prepare sentencing memorandum</u>

Defendant contends that his attorney should have prepared a sentencing memorandum that properly put his criminal history into perspective, that would have demonstrated that his criminal history category overstated the seriousness of his criminal history, that would have clearly demonstrated the disparity between his sentence and that of his co-conspirators, and that moved for a downward departure for him.  He asserts that the presentation at sentencing was "equally ineffectual."

As noted above, the defendant's criminal history was set forth in the PSR, and discussed at sentencing by the parties.  Furthermore, the issue of defendant's criminal history was considered on appeal.  Defendant's arguments before this court that the criminal history should not have been considered have been shown to be without merit.  Guidelines § 4A1.3(b)(1) permits the court to depart downward when criminal history is significantly overrepresented.  See also *United States v. Smith*, 289 F.3d 696, 709 (11th Cir. 2002).  Downward departure is permitted when "reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendants' criminal history or the likelihood

that the defendant will commit other crimes."  In this case, even if one of defendant's three juvenile convictions had been disregarded, he would have still had four criminal history points and fallen into the same criminal history category. Additionally, with respect to recidivism, the defendant did not cease his involvement in illegal activity after the return of the Oregon indictment.

Defendant also contends that counsel should have addressed the disparity between his sentence and that of his co-conspirators in the sentencing memorandum.  He does not go into any detail about the alleged disparities in his memorandum in support of his § 2255 motion, and the government has not addressed the issue in its response.  Defendant's sentence was based essentially on the amount of loss attributed to him and his criminal history.  Defendant was sentenced at the midpoint of the applicable advisory guidelines range, and the appellate court found his sentence to be reasonable.  The mere fact that some defendants receive seemingly harsher sentences as a result of the application of the advisory guidelines does not render the sentences of such defendants unconstitutional. The purpose of the guidelines are to help avoid excessive sentencing disparities while maintaining flexibility to individualize sentences where necessary.  *See United States v. Williams*, 472 F.3d 835, 839 (11th Cir. 2006) (citing *United States v. Booker*, 543 U.S. 220, 264-265, 125 S.Ct. 738, 767, 160 L.Ed.2d 621 (2005)).  Title 18 U.S.C. § 3553(a)(6) instructs that a district court is to "avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct."  In this case, defendant has not shown that a similarly situation co-defendant received a disparate sentence, or that his sentence would have been different had counsel made an argument against sentencing disparity.

13. <u>Failure to explore leadership role enhancement</u>

Defendant asserts that counsel was ineffective for permitting the court to impose a four level enhancement for a leadership role when counsel did not interview other witnesses or explore a factual basis for avoiding the imposition of this unjust enhancement.  Defendant apparently believes counsel should have interviewed Thach Ngoc Pham, who also received a four level role adjustment, in an effort to ascertain the leader of each conspiracy.  Although he does not say specifically what evidence counsel might have learned, he asserts that counsel's failure to investigate prejudiced him.[10]  The record evidence established that the defendant was an organizer of both the Florida and Oregon schemes, and that numerous individuals acted under his direction.  Both of the schemes were highly extensive and involved well over five participants.  An enhancement pursuant to § 3B1.1(a) is appropriate if the defendant is an organizer or leader of a criminal activity involving five or more participants or is otherwise extensive.[11]  To determine if this enhancement applies, a sentencing court considers the following factors:  (1) exercise of decision-making authority, (2) nature of participation in the commission of the offense, (3) recruitment of accomplices, (4) claimed right to a larger share of the fruits of the crime, (5) degree of participation in planning or organizing the offense, (6) nature and scope of the illegal activity, and (7) degree of control and authority exercised over others.  *United States v. Ramirez*, 426 F.3d 1344, 1355 (11th Cir. 2005) (per curiam) (quotations omitted) (cited in *United States v. Luong,* 172 Fed.Appx. 284, 292 (11th Cir. 2006)).  The defendant does not have to be the sole leader or "kingpin" of a conspiracy to be considered an organizer or leader within the meaning of the Guidelines.  *Ramirez*, 426 F.3d at 1355 (citing *United States v.*

---

[10]This assumes that co-defendant Pham would have been willing to talk to counsel.

[11]Lesser adjustments are appropriate for a defendant who was a manager or supervisor, but not a leader, or who was an organizer, leader, manager, or supervisor in any other criminal activity.  U.S.S.G. § 3B1.1(b) and (c).

*Rendon*, 354 F.3d 1320,1332 (11th Cir. 2003)).   This defeats defendant's apparent suggestion that since Pham received the adjustment for being a leader or organizer in the unlawful conduct, the adjustment was not properly applied to defendant. Furthermore, an individual who has decision-making authority and exercises control may be subject to the adjustment.  *Rendon*, 354 F.3d at 1332.  The Eleventh Circuit, in considering this issue on appeal, found that the "evidence in the record supports a finding that Luong was a leader or organizer of a large-scale check-cashing scheme involving five or more participants, that he recruited others to participate, and that he took a large portion of the profits," and concluded that the district court did not clearly err in the application of the adjustment.   Hence the court need not reconsider this issue.  See *Nyhuis*, 211 F.3d at 1343 (quotation omitted). To the extent defendant's ineffective assistance of counsel claim places the issue in a different light, he has not suggested any additional argument counsel could or should have made to avoid proper application of this enhancement.

Based on the foregoing, it is respectfully RECOMMENDED:

The motions to vacate, set aside, or correct sentence (case 3:04cr54, doc.245; and case 3:04cr85/RV, doc. 49)  be DENIED.

At Pensacola, Florida, this 25th day of January, 2008.

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings. See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**

*Case No: 3:04cr54/RV; and 3:04cr85/RV*